**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BEVERLY PARKER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.: 12-00539-KD-B** |
| | ) | |
| **ENCORE REHABILITATION, INC.,** | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court the parties' Amended Joint Motion to Approve [the FLSA] Settlement  (Docs. 5, 7).

**I.     Background**

Plaintiff Beverly Parker ("Plaintiff") initiated this action against Defendant Encore Rehabilitation, Inc. ("Defendant") for violations of the *Fair Labor Standards Act of 1938*, as amended, 29 U.S.C. § 201 *et seq.,* ("the FLSA") alleging three (3) claims against the Defendant for: 1) willful and intentional violations of the FLSA, by refusing to pay her overtime and for the hours she worked; 2) negligence/wantonness with regard to the training and supervision of Plaintiff's co-employees, supervisors and other management employees, as well as with regard to the investigation of Plaintiff's claims; and 3) defamation concerning oral and written statements made by the Defendant to the Board of Nursing.  (Doc. 1).  Plaintiff sought relief including "the removal of all unfavorable material related to this matter from her personal files," lost wages, back pay, front pay, compensatory damages, liquidated damages, mental anguish damages, attorney's fees, equitable relief and costs.  (Id. at 6).

The parties reached a settlement of Plaintiff's claims and jointly moved for approval of

the settlement as well as dismissal of this case with prejudice. (Doc. 5). As the motion did not include a copy of the settlement agreement, the parties were ordered to file a supplement attaching same thereto, so that the Court could determine whether the settlement is a fair and reasonable resolution of a bona fide dispute of the FLSA claims. (Doc. 6). The parties jointly supplemented their filings, and attached a copy of the Settlement Agreement to an amended motion for approval. (Doc. 7).

In so doing, the parties have jointly submitted the following as the agreed upon factual record in this case:

> This action was brought by Beverly Parker who was employed by the Defendant as a Family Nurse Practitioner. Plaintiff alleged that after her termination she continued to work by updating certain medical charts, but was not paid for the hours worked. Plaintiff further alleged that Defendant defamed her by making false statements to the Alabama State Board of Nursing. Plaintiff sought back wages and mental anguish damages. Plaintiff was paid $40.00 an hour while employed. She claimed that she worked approximately 200 hours over a two week period after her termination. However, Plaintiff also claimed that her primary claim against the Defendant was not the FLSA claim, but the alleged defamation claim.

> The Defendant denied all allegations. Defendant claimed that Plaintiff was not requested to nor required to continue working on charts after her termination. Specifically, Defendant maintained that when Plaintiff asked if she could continue to work on charts after her termination, she was instructed not to do so. Defendant also denied making defamatory statements regarding Plaintiff. Defendant claimed that even if Plaintiff had properly worked after her termination, which it denied, the most she could have worked was approximately 30 hours.

> After arms-length negotiations, the Parties reached an agreement in which both sides compromised their positions on the FLSA claim and the defamation claim. The parties negotiated specifically regarding future communications with the Alabama State Board of Nursing about Parker. The Agreement also calls for a total settlement of $3,000.00 which constitutes approximately $1,500.00 in back wages and $1,500.00 in liquidated damages. The Parties agreed that because this Agreement was reached prior to even service of the Complaint and because Plaintiff's primary claim was for defamation (where such fees are not recoverable), attorney's fees would not be paid by the Defendant. Any attorney's fees paid to the Plaintiff's attorney were paid by the Plaintiff and are not part of the settlement. Both the Plaintiff and Plaintiff's attorney agreed that the fee paid was fair and

reasonable and that such fees should not be part of the settlement….

The settlement reimburses Plaintiff for approximately 37.5 hours of alleged unpaid wages, plus an equal amount of liquidated damages. Defendant claimed that Plaintiff was entitled to no such back wages and no liquidated damages whatsoever. As such, the Parties reached an arms-length bargained for settlement to avoid the costs and burdens of litigation. The Agreement was reached prior to the onset of discovery and prior to the investment of time by the Plaintiff and her witnesses in pursuit of this action. In fact, the Defendant was not even served with a copy of the Complaint prior to reaching a full settlement of all claims.

(Doc. 7 at 1-3).  Moreover, the parties jointly agree and propose to the Court that this is a fair and reasonable resolution of "a bona fide dispute of the FLSA provisions and over entitlement to, and the amount of back pay." (Id. at 1, 3).

Pursuant to the parties' settlement agreement (Doc. 7-1), Plaintiff will receive $3,000.00, the full amount of her alleged unpaid wages for 37.5 hours plus an equal amount of liquidated damages. Additionally, the parties agree and propose that while this case constituted a bona fide dispute over FLSA provisions, both sides have compromised their positions on the FLSA claim and the defamation claim such that this is a fair and reasonable resolution of the claims.  (Doc. 7 at 2).  Moreover, the parties agree and propose further, that the Defendant shall not pay any attorney's fees and such are not part of the settlement agreement.  (Id.)

II.   **Discussion**

This is an FLSA case and the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA in order to approve the settlement.[1]  See, e.g., Lynn's Food Stores, Inc. v. United States of America, 679 F.2d 1350 (11th Cir. 1982).

---

[1] See, e.g., Silva v. Miller, 307 Fed. Appx. 349 (11th Cir. 2009); Lynn's Food Store, Inc. v. United States, 679 F.2d 1350, 1354-1355 (11th Cir. 1982). See also e.g., *Robert L. Dunagan v. ABBC, Inc.,* CV

3

In Lynn's Food, 679 F.2d 1350, the Eleventh Circuit recognized two methods for settlement of claims brought pursuant to the FLSA: Supervision by the Secretary of Labor or by court approval in a private action where plaintiff is represented by counsel. As to the latter, the parties may compromise and settle the FLSA claim but only with Court approval of the settlement agreement. The rationale is that:

> [s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Lynn's Food, 679 F.2d at 1354.  The circuit court concluded that:

> [o]ther than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

Id. 679 F.2d at 1355.  Therefore, before entry of a stipulated judgment, the Court must determine whether there is a "bona fide dispute over FLSA provisions," and then determine whether the settlement agreement proposed is a fair and reasonable resolution of that dispute.

---

11-280-KD-C (Docs. 22, 28); *Jimmy Salter v.  Carlous L. King, et al.,* CV 11-464-KD-M (Docs. 10, 11).

Moreover, in <u>Silva v. Miller</u>, 307 Fed. Appx. 349, 351 (11th Cir. 2009), the Eleventh Circuit noted that the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'"   "Therefore, in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of *Lynn's Food Stores*."   <u>Vergara v. Delicias Bakery & Restaurant, Inc.</u>, 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012).

A.   <u>**Bona Fide Dispute**</u>

Section 216(b) of the FLSA provides that " ... [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages ... "   29 U.S.C. § 216(b). Section 207 is captioned "Maximum Hours"  and paragraph (a)(1) states as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Upon review of the amended complaint and answer (Doc. 1) and considering the Defendant's representations in the present motion (as it has not yet filed an Answer), the Court finds that there is a "bona fide dispute" as to whether back pay is owed and as to whether the FLSA applies.  Specifically, the parties report that they have compromised this case, and jointly

agree that while this case constituted a bona fide dispute over FLSA provisions, Plaintiff has received the full amount that she is due.

**B.      Fair and Reasonable Resolution**

 Lynn's Food requires a court to determine whether a plaintiff's compromise of their claims is fair and reasonable.  Lynn's Food, 679 F.2d at 1352-1355; Dees v. Hydradry, Inc., 706 F.Supp.2d 1227, 1238-1239 (M.D. Fla. 2010)).  A general framework for evaluating the fairness of an FLSA compromise includes: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel.  Dees, 706 F.Supp.2d at 1241.

1.      Compromise of the FLSA Claim

Under the FLSA " ... [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages[.]" 29 U.S.C. § 216(b).  The joint motion sets forth that Plaintiff claimed that she worked over 200 hours after her termination and that when employed, she was paid $40/hour – adding that the settlement reimburses her for 37.5 hours of alleged unpaid wages.  Based on this, if proven, Plaintiff would be entitled to $7,500.00 in wages, and moreover, "an additional equal amount as liquidated damages" for a total of $15,000.00.  Plaintiff's claim is thus compromised in the parties' settlement agreement which provides for $3,000.00 to the Plaintiff.

In the joint motion, the parties assert that both sides compromised their positions. Based on this representation and the parties' agreed factual record (see *supra* Section I), this compromise reflects a fair and reasonable settlement of Plaintiff's FLSA claim.

2.  Scope and Terms of the Settlement Agreement

a.  Confidentiality Clause

The settlement agreement contains a confidentiality clause. (Doc. 7-1 at 5 at ¶9). Confidentiality clauses are generally disallowed in FLSA actions because of the private-public character of an FLSA action and the regulatory effect of the FLSA. See, e.g., Robertson v. Ther-Rx Corp., 2011 WL 1810193, *3 (M.D. Ala. May, 12, 2011) (striking the confidentiality provision and explaining that "[s]ettlements under the FLSA involve not only the parties, but the public[]") (citing Dees, 706 F.Supp.2d at 1242 (stating that "a confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the 'private-public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute[]") and Stalnaker v. Novar Corp., 293 F.Supp.2d 1260, 1264 (M.D. Ala. 2003) (finding that "[a]bsent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger the national health and well-being[]")). See also Webb v. CVS Caremark Corp., 2011 WL 6743284, *3 (M.D. Ga. Dec. 23, 2011) (finding that that "'a confidentiality provision in a FLSA settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights[]'"); Hamilton v. Brinker Intern. Payroll Co., L.P., 2011 WL 6032945, *1 (M.D. Fla. Dec.

5, 2011) (noting that courts will not approve or enforce any provisions calling for keeping the settlement terms confidential as such provisions contravene FLSA policy).

Courts have also expressed disfavor on the basis that confidentiality clauses work more to benefit the employer than the employee and are ancillary or "side deals" apart from the bona fide dispute. See, e.g., Hogan v. Allstate Beverage Co., Inc., 2011 WL 3568818, *8-9 (M.D. Ala. Aug. 15, 2011) (discussing the public policy concerns as well as the impact on the plaintiff and finding that "the confidentiality provision here is not only unequally to the benefit of Allstate Beverage alone and it would not only frustrate FLSA goals, it would expose Hogan to liability for its almost certain violation without Hogan having received anything whatsoever in return." "Such terms may be standard to civil litigation, but in the context of the FLSA, they represent 'side deals[]' … The provisions 'confer a partially offsetting benefit on the employer' that is ancillary to the bona-fide dispute over FLSA coverage and wages due." Id. at *7. See also e.g., Glass v. Krishna Krupa, LLC, 2010 WL 4064017, *1 (S.D. Ala. Oct. 15, 2010) (providing that "[t]he employer's most proximate damages from the employee's breach are the unpaid FLSA wages due other employees who learned of their FLSA right from the employee who breached the confidentiality agreement.   A confidentiality agreement, if enforced, (1) empowers an employer to retaliate against an employee for exercising FLSA rights, (2) effects a judicial confiscation of the employee's right to be free from retaliation for asserting FLSA rights, and (3) transfers to the wronged employee a duty to pay his fellow employees for the FLSA wages unlawfully withheld by the employer. This unseemly prospect vividly displays the inherent impropriety of a confidentiality agreement in settlement of an FLSA dispute[]").   Accordingly, the confidentiality clause will not be approved.

b.    Pervasive Release

The settlement agreement contains a broad sweeping release of all claims related to Plaintiff's FLSA claim, and release of many other specific and general types of claims in exchange for the consideration set forth (including but not limited to Title VII, ADEA, ADA, FLMA, OSHA, workers' compensation statutes, etc.).  (Doc. 7-1 at 3-5).

This type of release provision has been called a  "pervasive" release.  Courts are hesitant to approve such releases because any discount or devaluation of the consideration for the FLSA claim as a result of this release renders the FLSA settlement unfair and unreasonable.   As explained in Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1348-1349 (M.D. Fla. 2010):

> …a non-cash, but still valuable, concession by an employee" such as agreeing to this expansive release of claims, "affects both the 'fairness' and the 'full compensation' component of a settlement. A gratuitous concession in exchange for the required payment is 'unfair' because (1) the FLSA obligates the employer without exception or condition to pay the full amount owed and (2) a valuable, non-cash concession extended to the employer in exchange for otherwise 'full compensation' effectively reduces the employer's payment by an amount equal to the value of the concession (and accordingly reduces the employer's payment to less than 'full compensation')….

Additionally, this type of release shifts the risk to the employee:

> An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim. In the language of *Hydradry*, a pervasive release is a "side deal" [ ] in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee. (If an employee signs a pervasive release as part of a "side deal" and later discovers a valuable but released claim, the employee perhaps looks for compensation from the attorney who advise the employee to grant the release.) Although inconsequential in the typical civil case (for which settlement requires no judicial review), ***an employer is not entitled to use an FLSA claim*** (a matter arising from

9

the employer's failing to comply with the FLSA) *to leverage a release from liability unconnected to the FLSA*.

Id. at 1351 (citations and footnote omitted, emphasis added).  See also Webb, 2011 WL 6743284, *3 (declining approval of a pervasive release); Hamilton, 2011 WL 6032945, *2 (providing that a pervasive release of unknown claims "fails judicial scrutiny").

The Court acknowledge the posture of this FLSA action in that Plaintiff did not bring claims under Title VII or the FMLA or many of the other claims set forth in the pervasive release contained within the settlement agreement.  If she had, release from those specific types of claims might be fair and permissible.  However, because she did not, the Court declines to approve the proposed settlement agreement with a pervasive release.

## III.  <u>Conclusion</u>

Therefore, for those reasons set forth herein, the parties' Amended Joint Motion to Approve [the FLSA] Settlement  (Docs. 5, 7) is **DENIED**.  The parties have leave of Court to, on or before **January 11, 2013** file a revised settlement agreement and motion for approval of same.

**DONE** and **ORDERED** this the **21st** day of **December 2012.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**